# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## BRYSON CITY DIVISION
## CIVIL CASE NO. 2:12cv87

| | | |
|---|---|---|
| **ELIZABETH BOSTIC , and** | ) | |
| **J.B., a minor Child, by and through** | ) | |
| **JENNY BOSTIC, his parent and legal** | ) | |
| **guardian,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **ELYSE MADER and JOHANNA MADER** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |
| | ) | |
| **NATIONWIDE PROPERTY & CASUALTY** | ) | |
| **INSURANCE CO.,** | ) | |
| | ) | |
| **Intevenor Defendant/Counter Claimant,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ELIZABETH BOSTIC , and** | ) | |
| **J.B., a minor Child, by and through** | ) | |
| **JENNY BOSTIC, his parent and legal** | ) | |
| **guardian,** | ) | |
| | ) | |
| **Counter Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiffs' Motion to

Reconsider Order Granting Defendants' Motion to Dismiss. [Doc. 29].

Plaintiffs assert this Court can reconsider, and upon reconsideration, should reverse its Order [Doc. 24] dismissing Plaintiffs' claims for punitive damages and dismissing Defendant Johanna Mader from this case. The Court will reconsider its prior Order, and upon such reconsideration, and for the reasons stated herein, will reaffirm that Order.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs began this action by a Complaint filed November 21, 2012. [Doc. 1]. The Complaint states in its factual recitation that Plaintiff Elizabeth Bostic ("Bostic") was driving a Kawasaki motorcycle on June 5, 2012, on North Carolina Highway 28 near Panther Creek Road in the Western District of North Carolina. [Id. at 2]. At this same time and place, minor Plaintiff J.B. ("J.B.") was a passenger on a Honda motorcycle traveling with and near Bostic's motorcycle. [Id.]. Defendant Elyse Mader ("Elyse"), on June 5, 2012, was driving a Kia Sorrento sport utility vehicle on Panther Creek Road in the direction of N.C. Highway 28. [Id.].

Plaintiffs allege Elyse negligently entered the intersection of Panther Creek Road and N.C. Highway 28, and in so doing, collided with Bostic. [Id. at 2-3]. Plaintiffs further allege that as a result of this collision, Bostic was thrown from her motorcycle, seriously injured, and incurred substantial

medical expenses. [Id. at 3]. Relevant to the issues addressed herein, Plaintiffs assert in their Complaint:

> 15. Defendant Elyse Mader advised the responding law enforcement officer that she attempted to stop her vehicle but that her brakes were not working.
>
> 16. Plaintiff J.B. witnessed and observed the collision and the conduct of Defendant Elyse Mader when she struck Elizabeth Bostic, and witnessed the Defendant operating a cellular phone immediately before the collision.

[Id.].

Plaintiffs' First Claim asserts numerous theories of why Elyse was negligent in the operation of the Kia. [Id. at 4]. The First Claim further alleges generally that Defendant Johanna Mader ("Johanna") and Elyse both were negligent in failing to maintain the safety features of the vehicle including the braking system. [Id.]. Plaintiffs allege that, due to the Defendants' negligence, Defendants proximately caused injury to Bostic and damage to the Kawasaki motorcycle. [Id.].

Plaintiffs' Second Claim seeks punitive damages in favor of Bostic only and against Elyse only, asserting that Elyse's conduct in operating the Kia "was willful, wanton, gross, reckless, and in complete disregard for the safety and rights of others, particularly Plaintiff Elizabeth Bostic." [Id. at 5]. Elyse's grossly negligent conduct, it is alleged, was the product of her

3

decision to operate the Kia while using a cell phone and/or while driving the Kia with faulty brakes. [Id.].

Plaintiffs' Third Claim asserts Elyse was negligent *per se* in the operation of the Kia by driving recklessly in violation of N.C. Gen. Stat. § 20-140. [Id. at 5]. Plaintiffs allege that, due to Elyse's negligence *per se*, she proximately caused injury to Bostic. [Id.].

Plaintiffs' Fourth Claim asserts that J.B. and Bostic are siblings and that J.B. witnessed the Kia driven by Elyse collide with the motorcycle driven by Bostic. [Id. at 6]. Further it is generally alleged, due to Elyse's negligence in operating the Kia, and due to Johanna and Elyse both negligently failing to maintain the safety features of the vehicle, and finally due to Johanna's negligent entrustment of the Kia to Elyse in its then condition, Defendants thereby negligently inflicted emotional distress upon J.B. [Id.]. With regard to J.B.'s injury, the Complaint asserts:

> 33. Plaintiff J.B. has suffered, continues to suffer and is likely to continue to suffer severe emotional distress as a result of seeing his sister injured by Defendants' negligence, which distress arises from the relationship and concern for the wellbeing had between the Plaintiffs.

[Id.].

The Defendants filed an Answer [Doc. 8] to the Complaint [Doc. 1] responding to Plaintiffs' allegations and raised Bostic's contributory

4

negligence as an affirmative defense. Also, Defendants included two motions to dismiss in their Answer that are pertinent to this discussion. [Doc. 8 at 1-2]. Defendants' First Motion to Dismiss had three sub-parts and was made pursuant to Federal Rule of Civil Procedure 12(b)(6) contending: (1) Bostic's claim for punitive damages (Second Claim) did not allege any basis for an award of punitive damages supported by North Carolina law; (2) J.B.'s claim for negligent infliction of emotional distress (Fourth Claim) did not allege facts that would support such a claim; and, (3) the Complaint did not allege any "action, inaction, or conduct at all on the part of Johanna Mader which could be negligence on her part." [Doc. 8 at 1-2]. Defendants' Second Motion to Dismiss had two sub-parts and was made pursuant to principles of standing: (1) Plaintiffs never alleged their ownership of the Kawasaki motorcycle in the Complaint and thus have no standing to seek damages for that vehicle; and, (2) to the extent the Complaint seeks damages for J.B's medical bills, only his parents have standing to assert such claims due to J.B.'s minority. [Doc. 8 at 2].

Some of the Defendants' motions to dismiss set forth in the Answer were later memorialized in a formal Motion [Doc. 9] and Memorandum [Doc. 10] filed by the Defendants with the Court on January 21, 2013. In

response to Defendants' formal dismissal Motion, the Plaintiffs filed their First Amended Complaint [Doc. 14] as of right on February 11, 2013.

Like the original Complaint, the First Amended Complaint set forth a factual recitation of the alleged events occurring June 5, 2012, leading to the collision of the Kia SUV driven by Elyse with the Kawasaki motorcycle driven by Bostic. Plaintiffs then included a new allegation in paragraph 12 of the First Amended Complaint that Elyse was operating the Kia SUV "with the permission of Defendant Johanna Mader[.]" [Doc. 14 at 2]. Additionally, Plaintiffs added a new paragraph and modified the allegations contained in another paragraph:

> 16. Defendant Elyse Mader advised the responding law enforcement officer that she attempted to stop her vehicle but that her brakes were not working.
>
> 17. Upon information and belief, Johanna Mader, as owner of the vehicle, knew or had reason to know of the failure of the brakes but continued to utilize and permit the use of the vehicle regardless of this knowledge.
>
> 18. Plaintiff J.B., riding along with his sister, was in the immediate zone of the incident: He witnessed and observed the collision and the conduct of Defendant Elyse Mader when she struck Elizabeth Bostic, and witnessed Defendant Elyse Mader operating a cellular phone immediately before the collision.

[Id. at 3].

Plaintiffs' First Claim in the First Amended Complaint asserts Elyse was negligent, on numerous grounds, in operating the Kia SUV, and that Johanna was negligent in failing to inspect and maintain the safety features of the vehicle including the braking system. [Id. at 3-4]. Plaintiffs allege that, due to the Defendants' negligence, Defendants proximately caused injuries to Bostic, the injuries to Bostic were brought about by the Defendants' willful, wanton, gross, and reckless conduct, and, as a result of the injuries to Bostic caused by Defendants, she is entitled to actual, general, and punitive damages. [Id. 3-6].

Plaintiffs' Second Claim[1] in their First Amended Complaint reasserts with more factual detail Plaintiff J.B.'s injuries he contends resulted from Defendants' negligent infliction of emotional distress.

> 31. Plaintiff J.B. has suffered, continues to suffer and is likely to continue to suffer severe emotional distress, manifesting in crying, anxiety, sadness, worry, and sleeplessness, extreme as a result of seeing his sister injured by Defendants' negligence, which distress arises from the relationship and concern for the wellbeing had between the Plaintiffs.

[Id. 6].

_____

[1]Plaintiffs combined the allegations from their First, Second, and Third Claims set forth in the original Complaint into their First Claim alleged in their First Amended Complaint. As a result, Plaintiffs' Fourth Claim of the original Complaint is realleged as the Second Claim in their First Amended Complaint.

On February 14, 2013, Defendants filed their Answer [Doc. 17] to Plaintiff's First Amended Complaint [Doc. 14] responding to Plaintiffs' allegations and raising Bostic's contributory negligence as an affirmative defense. Also, Defendants raised the same two pertinent motions to dismiss in their second Answer that they had raised in their first Answer. [Doc. 17 at 1-2]. Defendants' First Motion to Dismiss had the same three sub-parts as before and was made pursuant to Rule 12(b)(6) contending: (1) Plaintiffs' claim for punitive damages did not allege any basis for such an award under North Carolina law; (2) J.B.'s claim for negligent infliction of emotional distress failed to allege facts that would support such a claim; and, (3) the Complaint failed to allege any facts that would support a claim against Johanna for which relief could be granted. [Doc. 17 at 1].

Defendants' Second Motion to Dismiss, like before[2], was made pursuant to principles of standing. To the extent the Complaint seeks damages for J.B's medical bills, the Defendants contend only J.B.'s parents have standing to assert such claims due to J.B.'s minority. [Doc. 17 at 2].

---

[2]Plaintiffs originally sought compensation for damage to the Kawasaki motorcycle driven by Bostic at the time of the collision. However, Plaintiffs abandon any such claim in their First Amended Complaint. Defendants' Second Motion to Dismiss contained in the Answer to Amended Complaint, therefore, contains only one sub-part.

Some of the Defendants' motions to dismiss set forth in the Answer to Amended Complaint were later memorialized in a formal Motion [Doc. 18] and Memorandum [Doc. 19] filed by the Defendants with the Court on February 14, 2013. The formal Motion to Dismiss [Doc. 18], however, included only two of the three bases alleged under Rule 12(b)(6) and thus sought an order "dismissing the following claims[ ] with prejudice: (1) the claims of the Plaintiffs for punitive damages and (2) all claims against the Defendant, Johanna Mader." [Doc. 18 at 1]. Defendants neither mentioned nor briefed their contention that J.B.'s claim for negligent infliction of emotional distress failed to allege facts that would support such a claim, nor their defense that J.B., as a minor, was without standing to seek damages for out of pocket medical expenses associated therewith.

On March 7, 2013, Defendants filed as of right their Amended Answer to Amended Complaint. [Doc. 20]. The Defendants' Amended Answer to Amended Complaint [Doc. 20], in all material respects, is the same as the Defendants' Answer to Amended Complaint [Doc. 17], with two exceptions. First, Defendants' Amended Answer added the affirmative defense of accord and satisfaction/compromise settlement [Doc. 20 at 3]. Second, Defendants' Amended Answer added a severance motion under Rule 42(b) requesting the Court convene a separate jury to try the single issue of

whether Bostic's claims are barred by Defendants' affirmative defense of accord and satisfaction/compromise settlement. [Id.].

On March 12, 2013, Defendants filed a document entitled "Notice of Default on Renewed Motion to Dismiss." [Doc. 23]. Defendants filed this document "to alert the court that the Plaintiffs have not filed any Response in opposition to their Renewed Motion to Dismiss portions of the Amended Complaint." [Id.]. On March 14, 2013, the Court entered an Order [Doc. 24] dismissing Plaintiffs' punitive damages claims and dismissing Defendant Johanna Mader from the this action. [Id. at 2]. Within minutes of the entry of this Court's dismissal Order [Doc. 24], Plaintiffs filed their Response [Doc. 26] to Defendant's Renewed Motion to Dismiss [Doc. 18].[3]

On March 15, 2013, Plaintiffs filed their "Motion to Reconsider Order Granting Defendant's [sic] Motion to Dismiss." [Doc. 29]. In their reconsideration motion, Plaintiffs acknowledged their Response filed the previous day was not timely and candidly stated that the only explanation for their failure in this regard was that they "overlooked the deadline set forth in the ECF notice of February 14, 2103." [Id. at 1]. On March 25, 2013, Defendants filed their Response in Opposition to Motion for

---

[3] The Court's electronic filing system reflects that the Plaintiffs submitted their Response eight minutes after the Order had been entered. [Doc. 24].

Reconsideration. [Doc. 31]. On April 9, 2013, new counsel entered an appearance on behalf of the Plaintiffs. [Doc. 33]. Plaintiffs' original counsel thereafter moved [Doc. 34] to withdraw from further representation of the Plaintiffs, which the Court allowed by Order filed April 17, 2013 [Doc. 36].

While Plaintiffs' Reconsideration Motion was pending, Nationwide Property & Casualty Insurance ("Nationwide"), on April 22, 2013, filed a Motion to Intervene [Doc. 37], supportive Memorandum of Law [Doc. 38], and proposed Answer [Doc. 39] as intervenor-defendant setting forth its claims and defenses. On May 23, 2013, the Court permitted Nationwide to intervene by Order [Doc. 41] entered that day. The Court's Order also permitted Nationwide fifteen days within which to file a response to Plaintiffs' Motion for Reconsideration. [Id.]. Nationwide filed its Response [Doc. 42] on June 7, 2013. Nationwide's Response, consistent with the Defendants' Response, asserted that the Court's Order dismissing Plaintiffs' punitive damages claims, and dismissing Defendant Johanna Mader, was legally correct and Plaintiffs' Motion for Reconsideration should be denied. [Id.].

Now that all of the parties have responded and have addressed Plaintiffs' Motion for Reconsideration, the issues raised therein are ripe for the Court's consideration.

## STANDARD OF REVIEW

Interlocutory orders that resolve fewer than all claims, or the rights and liabilities of fewer than all parties, are "subject to revision at any time before the entry of [final] judgment[.]" F.R.Civ.P. 54(b); Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991). This power to revisit an interlocutory order is committed to the discretion of the district court. Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 12 (1983) (every order short of a final decree is subject to reopening at the discretion of the district judge).

To survive a motion to dismiss made pursuant to Rule 12(b)(6), a party's allegations, treated as true, are required to contain "enough facts to state a claim to relief that is *plausible on its face*." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (emphasis added). On the one hand, the claim need not contain overly "detailed factual allegations[.]" Id. at 555. On the other hand, however, "a formulaic recitation of the elements of a cause of action will not do[,]" nor will mere labels and legal conclusions suffice. Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). The mere possibility that the defendants acted unlawfully is not sufficient for a claim to survive a motion to dismiss. <u>Twombly</u>, 550 U.S. at 570. The touchstone, therefore, is plausibility and not possibility.

**ANALYSIS**

In their Motion for Reconsideration, the Plaintiffs are quite candid in admitting that their failure to timely respond to Defendants' motion [Doc. 18] was due to inadvertent oversight. [Doc. 29 at 1]. The Defendants and Nationwide, on the other hand, urge the Court to refrain from reconsidering its dismissal Order lest this be seen as condoning if not rewarding Plaintiffs' behavior. Defendants further argue the Order is legally correct, as well as appropriately point out to the Court its very own words that Defendants' dismissal motion was "well taken and should be granted." [Doc. 24 at 1].

Had the Court, in the first instance, entered a dismissal order, robust in its analysis, cogently resolving the issues raised by the parties, the Court would be very reluctant to replow furrowed ground. But such is not the present state of affairs in this litigation and the parties deserve a clear understanding of why this Court (or any court) reached the decision that it

did.  Given, too, the admonition[4] that dismissal orders entered pursuant to Rule 12(b)(6) should not be rendered by default, the Court will exercise its discretion, expand on its previous spartan order, and endeavor to provide the parties a sound basis for its decision.

1. <u>Plaintiffs' Claim for Punitive Damages</u>.

A federal court sitting in diversity must apply the substantive law of the forum state as would the highest court of that state. <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938); <u>Castillo v. Emergency Med. Assocs. P.A.</u>, 372 F.3d 643, 646 (4th Cir. 2004).  Defendants' Renewed Motion to Dismiss [Doc. 18] asserts that Plaintiffs' First Amended Complaint, in seeking punitive damages, fails to allege any facts that would support such an award.  [<u>Id.</u> at 1].  Ultimately, Defendants are correct as a matter of law.  To be fair, however, North Carolina negligence terminology, especially since the advent of the State's statutorily defined punitive damages remedy, can appear less than precise in demarcating between the type of conduct that falls within the parameters of a negligence cause of action,

---

[4] <u>See</u>, 2 James Wm. Moore, et al., <u>Moore's Federal Practice</u> § 12.34(1)(a) (3d ed. 2013) ("A court may not grant a [rule 12(b)(6)] motion to dismiss on a 'default' basis merely because the opposing party has failed to submit a memorandum in opposition to the motion."); <u>see also</u>, <u>Issa v. Comp USA</u>, 354 F.3d 1174, 1177-1178 (10th Cir. 2003) (district court erred by dismissing complaint under rule 12(b)(6) merely because plaintiff failed to file response to motion to dismiss that was required by local rule).

and the kind of conduct that will support an award for punitive damages in a negligence action.

In North Carolina, the terms, "slight negligence," "negligence," and "gross negligence," can be traced at least as far back to the State's Supreme Court bailment decision handed down nearly 100 years ago in <u>Haynes v. Shapiro & Smith</u>, 168 N.C. 24, 84 S.E. 33 (1915).  While the <u>Haynes</u> case reached the court on a breach of warranty claim following the sale, and subsequent improper repair, of a piece of furniture, the court quickly observed that the matter was in law a case of negligence by the bailee/seller to whom the furniture was returned for repair.  The court began by noting that "[t]he rights and liabilities of the parties to a bailment, as we have said, depend primarily upon which party the bailment is intended to benefit."  <u>Id.</u>, 84 S.E. at 35.  The court explained that bailments may be divided into three categories, bailments that benefit: (1) the bailor, (2) the bailee, or (3) both parties mutually.  With these distinctions in place, the court first stated the corresponding historical duties of care owed by a particular bailee but ultimately recognized that a single duty of care obtains in cases of negligence:

> In bailments for the sole benefit of the bailor, the bailee will be liable only for gross negligence; in bailments for the mutual benefit of both parties, he will be liable for ordinary negligence;

in bailments for the exclusive benefit of the bailee, he will be liable even for slight negligence. This distinction, and the consequent distinction into three degrees of negligence, has been perpetuated in text-books and decisions, until it has become so interwoven with the law of bailments that it is impossible to discard it, though it has been frequently, severely, and perhaps, in some respects, justly, criticized. It certainly may be misleading, if not properly considered. "Negligence" may be defined generally as the breach of a duty to exercise commensurate care, and, to be actionable, it must proximately result in damage.

\* \* \* \* \* \*

Nevertheless, the terms "slight negligence," "gross negligence," and "ordinary negligence" are convenient terms to indicate the degree of care required; but, in the last analysis, the care required by the law is that of the man of ordinary prudence. This is the safest and best rule, and rids us of the technical and useless distinctions in regard to the subject; ordinary care being that kind of care which should be used in the particular circumstances and is the correct standard in all cases. It may be high or low in degree, according to circumstances, but is, at least, that which is adapted to the situation.

Id., 84 S.E. at 35-36 (citations omitted).

Pursuant to North Carolina law, if Defendants were merely negligent, their negligence could be overcome by a showing of any contributory negligence on the part of Plaintiffs, which would bar any recovery by Plaintiffs. Tyson v. Ford, 288 N.C. 778, 782, 47 S.E.2d 251, 254 (1948). If, however, Defendants' acts and omissions constitute gross negligence, such gross negligence would overcome any contributory negligence by

Plaintiffs, and Plaintiffs could proceed forward on their negligence claims. Brewer v. Harris, 279 N.C. 288, 297, 182 S.E.2d 345, 350 (1971).

Prior to 1996 when the parameters of punitive damages were controlled by North Carolina common law, a plaintiff's proof of "gross negligence" could suffice to support an award of punitive damages. Horton v. Carolina Coach Co., 216 N.C. 567, 5 S.E.2d 828, 830 (1939) (if the tort is the result of simple negligence damages will be compensatory, but if it was willful, or committed with such circumstances as show gross negligence, punitive damages may be given). Thereafter, North Carolina courts began expanding the concept of "gross negligence" to include elements of "willfulness" and "wantonness," especially in the context of punitive damages. Marsh v. Trotman, 96 N.C. App. 578, 580, 386 S.E.2d 447, 448 (1986).

On January 1, 1996, North Carolina adopted a punitive damages statute, N.C. Gen. Stat. § 1D-1 to 1D-50. This legislation now dictates when, and to what extent, a plaintiff may recover punitive damages. In particular:

> Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:

(1) Fraud.
(2) Malice.
(3) Willful or wanton conduct.

N.C. Gen. Stat. § 1D–15(a). The existence of any aggravating factor must be proven by clear and convincing evidence. N.C. Gen.Stat. § 1D–15(b). In the present matter, if Defendants' conduct and omissions rose to the level of willful or wanton behavior, Plaintiffs could be entitled to an award of punitive damages. N.C. Gen. Stat. § 1D–5(7) defines "[w]illful or wanton conduct" as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm. '*Willful or wanton conduct' means more than gross negligence.*"[5]   Id. (emphasis added).

Plaintiffs have asserted, as the sole statutory aggravating factor at issue, the Defendants' alleged willful or wanton conduct. [Doc. 14 at ¶¶ 22, 24, 26]. As it pertains to Elyse, Plaintiffs allege she should be subject to punitive damages because her behavior at the time of the collision with

---

[5]To add to the nebulous nature of the conduct interchangeably described as gross negligence and willful and wanton behavior, even after 1996, a plaintiff's proof of "gross negligence," strictly speaking, will defeat a defendant's claim of contributory negligence though, statutorily, is no longer sufficient to support an award of punitive damages. Yancey v. Lea, 354 N.C. 48, 550 S.E.2d 155 (2001).

Bostic was willful and wanton in two respects: (1) "she attempted to stop her vehicle but that her brakes were not working[,]" and "she knew or had reason to know her brakes were not properly working." [Doc. 14 at ¶¶ 16, 21(g)]; and, (2) "[s]he operated her vehicle while utilizing a cellular phone in which [sic] was careless, willful, and/or wanton conduct in violation NCGS 20-137.4A." [Doc. 14 at ¶ 21(f)].

Turning to Plaintiffs' claims against Johanna, since vicarious liability is an impermissible ground to sustain an award of punitive damages, N.C. Gen. Stat. § 1D-15(c), Plaintiffs have alleged Johanna's behavior was willful and wanton because, "[u]pon information and belief, Johanna Mader, as owner of the vehicle, knew or had reason to know of the failure of the brakes but continued to utilize and permit the use of the vehicle regardless of this knowledge." [Doc. 14 at ¶¶ 17, 22]. Purely from the standpoint of setting forth allegations in the Complaint that match the requirements of the North Carolina punitive damages statute, Plaintiffs have employed the "magic words" that restate the elements. The inquiry, however, does not end at this point.

In the Complaint, the bulk of Plaintiffs' punitive damages allegations involve the Defendants' alleged knowledge of the braking system of the Kia owned by Johanna and driven by Elyse that collided with Bostic. The

nature of the "willful and wanton" conduct, Plaintiffs would contend, runs like this: The Kia's brakes were not working properly on the day of the collision; that they had not been working properly for some period of time prior to the day of the collision; that they had not been working properly for a long enough period of time prior to the day of the collision to put both Defendants on notice of their faulty state; and, that Defendants knowing (or having reason to know) the then-dangerous condition of the Kia's brakes, Defendants engaged in behavior constituting a conscious and intentional disregard of and indifference to the rights and safety of others by driving (or permitting another to drive) the Kia under the circumstances. Plaintiffs, however, have pleaded no facts to substantiate this claim.

As Defendants and Nationwide point out [Doc. 19 at 4], Plaintiffs' reliance on Elyse's allegations that she told the investigating officer at the scene that "she attempted to stop but the brakes were not working[,]" [Doc. 14 at ¶ 16], is factually insufficient. Elyse's statement is a present sense impression and gives no hint that Elyse knew, prior to the collision, that the Kia's brakes were faulty. Plaintiffs attempt to elaborate on Elyse's statement by alleging "Defendant Elyse Mader admitted to the police that her mother's vehicle has 'kind of bad brakes so I slid a little out into the road.'" [Doc. 26 at 2]. The Plaintiffs, however, do not make this allegation

in their Amended Complaint; this allegation comes in "Plaintiff's [sic] Response to Defendants' Renewed Motion to Dismiss" [Doc. 26], which is not a pleading under Rule 7(a). As such, the Court must disregard it since a Rule 12(b)(6) motion challenges the sufficiency of the pleadings only. See Davis v. Cole, 999 F.Supp 809, 813 (E.D. Va. 1998) (holding court cannot consider plaintiff's additional allegations contained in response to motion to dismiss filed under Rule 12(b)(6) because such memoranda do not constitute pleadings under Rule 7(a)).

With regard to Johanna, Plaintiffs' allegations fare no better. Plaintiffs simply allege:

> 17. Upon information and belief, Johanna Mader, as owner of the vehicle, knew or had reason to know of the failure of the brakes but continued to utilize and permit the use of the vehicle regardless of this knowledge.

[Doc. 14 at 3]. Nowhere in the Amended Complaint do Plaintiffs state *how* Johanna "knew or had reason to know of the failure of the brakes," nor *when* Johanna knew this information. This Court is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" Iqbal, 556 U.S. at 678. Put another way, while it is possible that Johanna, as the owner of the Kia, knew or should have known the condition of the Kia's brakes, Plaintiffs have stated no factual basis to indicate why it is plausible for a trier of fact

to believe so. The dismissal of Plaintiffs' punitive damages claims premised upon the Kia's alleged faulty braking system, upon reconsideration, will therefore not be disturbed.

Plaintiffs alleged a second theory, this one against Elyse only, in an effort to support their claim for punitive damages. The Plaintiffs state:

> 18. Plaintiff J.B., riding along with his sister, was in the immediate zone of the incident: He witnessed and observed the collision and the conduct of Defendant Elyse Mader when she struck Elizabeth Bostic, and witnessed Defendant Elyse Mader operating a cellular phone immediately before the collision.

[Doc. 14 at 3]. In support of their punitive damages claim based on this allegation, Plaintiffs assert Elyse "operated her vehicle while utilizing a cellular phone in which [sic] was careless, willful, and/or wanton conduct in violation NCGS 20-137.4A." [Id. at 4]. Plaintiffs' damages theory on this basis is precluded for two reasons. First, Plaintiffs state Elyse was "operating a cellular phone immediately before the collision." Under the North Carolina law cited by the Plaintiffs, N.C. Gen. Stat. § 2-137.4A, a motor vehicle operator is prohibited from using a cellular phone to read email or to send and receive electronic messages — activity commonly known as "texting" — while driving the vehicle. Exempted from coverage under this statute, however, is a driver's privilege to retrieve any name or telephone number stored in the cellular phone and to permit the driver to

place a call while driving.  N.C. Gen. Stat. § 2-137.4A(a)(2). Here again, Plaintiffs have alleged in their Amended Complaint a legal conclusion but no facts that support a violation of this statute.  Plaintiffs employ the vague phrases "operating a cellular phone" and "utilizing a cellular phone" which connote no definitive activity. [Doc. 14 at ¶¶ 18, 21(f)].  While it is possible, immediately prior to her collision with Bostic, that Elyse was unlawfully texting with another person and not searching her phone for the name or telephone number of a person to call, it is equally plausible, without any additional factual information, that she could have been doing the latter. Given the competing plausibilities, the claim must fail for want of factual sufficiency.

Second, assuming the Court could bridge the factual gap between the possibility of Elyse texting and the plausibility of her doing so at the time of the collision, which it cannot do, the statute cited by the Plaintiffs preempts their claim.  In enacting N.C. Gen. Stat. § 2-137.4A, the North Carolina legislature saw fit to exempt the activity of "texting" from the general rule that laws passed for the safety of the public automatically impose a duty of care, the violation of which is negligence in and of itself. The pertinent part of the anti-texting statute provides:

> Failure to comply with the provisions of this section shall not constitute negligence per se or contributory negligence per se by the operator in an action for the recovery of damages arising out of the operation, ownership, or maintenance of a vehicle.

N.C. Gen. Stat. § 2-137.4A(c), ¶2.   Ordinarily, a standard of conduct established by a safety statute must be followed. Where the safety statute at issue provides to the contrary as it pertains to civil liability, however, violation of the statute, without more, does not constitute negligence at all. Hinnant v. Holland, 92 N.C. App. 142, 147, 374 S.E.2d 152, 155 (1988), appeal denied, 324 N.C. 335, 378 S.E.2d 792 (1989). Consequently, assuming Plaintiffs had properly pled, and could persuasively prove, that Elyse was "texting" in violation of N.C. Gen. Stat. § 2-137.4A at the time of her collision with Bostic, such evidence standing alone would be insufficient as a matter of law to sustain a negligence verdict in favor of Plaintiffs on this theory.   Likewise, it could not support a finding if willful or wanton conduct and therefore will not support a claim for punitive damages.

Looking to the remaining allegations of Plaintiffs' Amended Complaint in an effort to discern any basis for punitive damages, the Court determines none exist. Plaintiffs contend that the collision forming the basis of this action and Plaintiffs' resulting injuries were the result of Defendants' negligence. The Amended Complaint contains a laundry list of potential

negligent acts allegedly done by Defendants but, other than the acts previously discussed, none sound the alarm of willful and wanton conduct. Accordingly, all bases of Plaintiffs' claims for punitive damages are insufficient mechanisms to afford relief, and upon reconsideration of Defendants' motion in this regard, will therefore be dismissed.

2. <u>Plaintiffs' Claim Against Defendant Johanna Mader</u>.

Under North Carolina law, an owner of a motor vehicle is liable for damages caused by the failure of her brakes if a claimant can allege and prove that she "knew or in the exercise of reasonable care should have known that the brakes were defective." <u>Mann v. Knight</u>, 83 N.C. App. 331, 333, 350 S.E.2d 122, 124 (1986). While N.C. Gen. Stat. § 20-124 requires motorists to maintain brakes in good working order, and the failure to do so is negligence per se, Plaintiffs have alleged only that Elyse was negligent in operating the vehicle on the day of collision with faulty brakes. Plaintiffs' theory of Johanna's liability rises or falls based upon her fund of knowledge concerning the history of the Kia's braking system prior to the wreck. Plaintiffs allege that:

> 17. Upon information and belief, Johanna Mader, as owner of the vehicle, knew or had reason to know of the failure of the brakes but continued to utilize and permit the use of the vehicle regardless of this knowledge.

[Doc. 14 at 3].  This conclusory allegation is factually insufficient to state a claim.  Simply being the purported owner of a vehicle, without any factual assertion that would place a reasonable and prudent person on notice that a vehicle's brakes were inoperable, will not carry the day.  "[T]he mere fact that one's brakes failed is not enough to establish a breach of the duty of due care. Where a brake failure is sudden and unexpected and could not have been discovered even with reasonable inspection, the motorist will not be held liable."  Mann, 83 N.C. App. at 333, 350 S.E.2d at 124.

In this matter, Plaintiffs have not alleged that the Kia's brake failure was anything but sudden and unexpected.  [Doc. 14 at 3] ("Defendant Elyse Mader advised the responding law enforcement officer that she attempted to stop her vehicle but that her brakes were not working."). Because Plaintiffs have not alleged any facts that, deemed true, would lead one plausibly to believe that the Kia's brakes were faulty prior to the collision and that Johanna knew or should have known of their deficient condition, Plaintiffs have not alleged any actionable negligence by Johanna Mader.  Since this is the only claim asserted against Defendant Johanna Mader, and it fails as a matter of law, she should be dismissed as a party Defendant in his action.

**ORDER**

**IT IS, THEREFORE, ORDERED,** that Plaintiffs' Motion for Reconsideration [Doc. 29] is **GRANTED**, and upon reconsideration, the Court's Order [Doc. 24] granting Defendants' Renewed Motion to Dismiss Plaintiffs' Claims for Punitive Damages and Plaintiffs' Claims against Defendant Johanna Mader in the First Amended Complaint [Doc. 18] is hereby **AFFIRMED.** Both the Plaintiffs' claims for punitive damages against the Defendants, and the Plaintiffs' claims against Defendant Johanna Mader, are **DISMISSED**.

Signed: August 12, 2013

Martin Reidinger
United States District Judge